MATTHEW J. RUGGLES, Bar No. 173052
ADRIANNE B. SAMMS, Bar No. 238786
BARBARA A. BLACKBURN, Bar No. 253731
LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way, Suite 390
Sacramento, CA 95833.4227
Telephone: 916.830.7200

Attorneys for Defendant
INTER-CON SECURITY SYSTEMS, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SHARON PATERSON,

Plaintiff,

v.

CALIFORNIA DEPARTMENT OF GENERAL SERVICES, RAYMOND ASBELL AND INTER-CON SECURITY SYSTEMS, INC.,

Defendants.

Case No. 2:05-cv-00827-MCE-JFM

**DEFENDANT INTER-CON SECURITY SYSTEM, INC.'S MOTION TO STRIKE AND/OR REDUCE THE PUNITIVE AND COMPENSATORY DAMAGES AWARD**

Date: May 16, 2008
Time: 9:00 a.m.
Dept.: 7

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento CA 95833 4227
916 830 7200

Firmwide:84872822.1 023767.1053

No. 2:05-cv-00827-MCE-JFM

DEFENDANT'S MOTION TO STRIKE/REDUCE AWARD OF DAMAGES TO PLAINTIFF

## I.
## NOTICE OF MOTION

TO PLAINTIFF SHARON PATERSON AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Inter-Con Security Systems, Inc. ("Inter-Con") hereby moves the Court for an order striking and/or reducing the award of punitive and compensatory damages awarded by the jury to Plaintiff Sharon Paterson ("Plaintiff"). Defendant's motion is made on the grounds that the punitive damages award must be stricken and/or reduced to a maximum of $300,000.00 pursuant to Title VII, 42 U.S.C. 1981a(b)(3). Defendant's motion is made on the additional grounds that the compensatory damages award must be reduced by the amount of the settlement payments made by former Defendant Department of General Services ("DGS") and former Defendant Raymond Asbell ("Asbell") to Plaintiff Sharon Paterson pursuant to California Code of Civil Procedure section 877 in the amount of $300,000.00. Finally, Defendant's motion is made on the grounds that the award of compensatory damages must be allocated by the Court among Plaintiff's federal and state law claims, and that Title VII's cap on damages should be applied after the allocation of damages by the Court.

Defendant's motion is based upon this Notice of Motion, the Memorandum of Points and Authorities below, the Declaration of Matthew J. Ruggles ("Ruggles Decl."), the accompanying exhibits, any oral argument that the Court may hear, and all pleadings and papers on file in this action.

## II.
## MEMORANDUM OF POINTS AND AUTHORITIES

### A. THE PUNITIVE DAMAGES AWARD MUST BE REDUCED TO A MAXIMUM OF $300,000 BECAUSE OF TITLE VII'S CAP ON DAMAGES.

Under Title VII, compensatory and punitive damage awards are capped at varying amounts based on the number of employees of the defendant employer. 42 U.S.C. § 1981a(b)(3)(A)-(D). Damages awarded for lost wages are not subject to this cap, but emotional distress and "other non-economic damages" are included. 42 U.S.C. 1981a(b)(3)(capping damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses). Defendant Inter-Con has over 501 employees, so

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 830 7200

an award of compensatory and punitive damages under Title VII cannot exceed $300,000.

In this case, the jury determined that Plaintiff was entitled to punitive damages only based on her Title VII claims. On April 10, 2008, the jury issued a punitive damages verdict in the amount of $4,137,500.00. Because the jury determined that Plaintiff was entitled to punitive damages only under Title VII, and not California law, the Court is required to reduce the verdict to the statutory maximum of $300,000.00.[1]

**B. <u>THE DISTRICT COURT MUST ALLOCATE A PORTION OF THE COMPENSATORY DAMAGES AWARDED TO PLAINTIFF TO HER TITLE VII CLAIMS.</u>**

Title VII also does not authorize an award of punitive damages absent an award of compensatory damages based on the Title VII claim. *See Kerr-Selgas v. American Airlines*, 69 F.3d 1205, 1214 (1st Cir. 1995) (punitive damages may not be awarded under Title VII without federal compensatory damages). When the verdict form awards damages but does not expressly allocate the damages among federal and state-law claims, the court has broad discretion to allocate the award of compensatory damages among the claims to determine proper application of Title VII's statutory cap on damages. *Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 910 (9th Cir. 1999); *Passantino v. Johnson and Johnson Consumer Products, Inc.*, 212 F.3d 493, 509-510 (9th Cir. 2000). Although the court has the theoretical discretion to allocate anywhere from $1 to $827,500 to Plaintiff's Title VII claims in this case, several important reasons peculiar to this case require the Court to make a substantial allocation of the compensatory damages to Plaintiff's Title VII claims.

First, a substantial portion of the jury's verdict was based expressly upon a finding of a "joint employer" status between Inter-Con and DGS. Although the basis for the joint employer determination in the verdict does not differentiate between the claims for sexual harassment under Title VII and the California Fair Employment and Housing Act ("FEHA"), it is evident that the Title VII claims played a significant role in the jury's determination on this issue because punitive

[1] As explained below, because a substantial portion of the compensatory damages should be allocated to Plaintiff's Title VII claims, the punitive damages award should be subject to further reduction depending on the amount of compensatory damages allocated to Plaintiff's Title VII claim.

damages were awarded only under Title VII.. As explained in Ninth Circuit Model Jury Instruction No. 5.5, the amount of punitive damages much be reasonably related to the award of compensatory damages. Obviously, the potential allocation of a nominal amount (such as $1) to the Title VII compensatory damages would be a sham because the jury could not reasonably have awarded $4.1 million in punitive damages based on an award of a single dollar. Indeed, Plaintiff's counsel's argument to the jury during the punitive damages phase of the trial was not consistent with a nominal award of compensatory damages under Title VII. Instead, Plaintiff's counsel argued successfully the entire amount of the underlying punitive damages award – the entire $827,500.00 – should be used as the benchmark for the punitive damages. Specifically, Plaintiff's counsel asked the jury to return a punitive damages verdict in the range of three to five times the underlying award, and the jury did just that: $827,500 x 5 = $4,137,500.00. Simply put, Plaintiff cannot have her cake and eat it too – she cannot argue that the entire compensatory award should be the basis for the punitive damages award, but at the same time insist that only a nominal amount actually be attributed to the Title VII claims for purposes of the mandatory statutory cap on damages. Permitting Plaintiff to do so is fundamentally unfair because it allows Plaintiff to potentially receive a grossly unconstitutional award of punitive damages.

Second, without the allocation of damages among the federal and state claims by the jury, the only objective criteria that the Court has to consider the value of the state-law claims is the settlement payments made by DGS and Asbell before trial. DGS paid Plaintiff $250,000.00, and Asbell paid Plaintiff $50,000.00, for a total pre-trial settlement of $300,000.00.

The settlement payment by Asbell is important because it reflects a negotiated value of only the state-law claims, not any federal law claims. Specifically, individual employees cannot be held liable for sexual harassment in violation of Title VII as a matter of law. *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). As a result, Asbell's payment to Plaintiff can only reflect a payment for potential liability under Plaintiff's FEHA-based harassment and retaliation claims.

Unlike the limited liability of an individual-employee defendant, the scope of DGS's potential liability to Plaintiff was broader than Asbell's because DGS potentially was liable for

harassment and retaliation in violation of Title VII, in addition to the liability it faced under the FEHA. DGS paid $250,000.00 to Plaintiff to settle her claims – five times what Asbell paid. Although the difference in DGS's ability to pay a potential verdict versus Asbell's ability to pay a potential verdict may have factored into Paterson's demand for a higher payment from DGS, the Court should not discount the fact that the only legal distinction in potential liability between DGS and Asbell was the Title VII claims that DGS faced, but Asbell did not. As a result, the only reasonable explanation is that Paterson and DGS negotiated a settlement payment of $250,000, *at least in part*, because of the Title VII claims. Furthermore, because DGS is a public entity and therefore cannot be held liable for punitive damages as a matter of law pursuant to California Government Code section 818, the potential threat of nominal damages against DGS that potentially could have supported a punitive damages award could not have been a factor in the settlement negotiations – the only potential issue was the award of compensatory damages under Title VII and the FEHA. As a result, Paterson has attributed a separate and independent value to her Title VII claims, even though she has not yet been required to account for her shifting explanations for the bases for Inter-Con's liability for punitive damages.

Plaintiff's counsel's argument to the jury, the award of punitive damages only under Title VII, as well as the settlement payments by DGS and Asbell to Plaintiff, all confirm that the jury, as well as Plaintiff herself, attributed more than a nominal value to the Title VII claims, the only reasonable method for the Court to exercise its discretion is to allocate a substantial portion of the $500,000 in emotional distress damages to the Title VII claim, as well as a substantial portion of the $257,500 in other non-economic damages to her Title VII claims. Because the jury obviously based its decision to award over $4.1 million in punitive damages under Title VII on the underlying award, which must include a compensatory damages award under Title VII that is reasonably related to the jury's award, the Court should allocate $250,000 (approximately one-third) of the compensatory damages award to Plaintiff's Title VII claim. This would result in a fair and equitable result for Plaintiff because it would not eliminate her ability to recover "unlimited" damages under her state-law claims because only approximately $250,000 of the underlying $757,500 award in compensatory damages would be subject to Title VII's cap – in other words, Plaintiff's total

recovery would be $877,500 – the entire $827,500 underlying award, plus $50,000 in punitive damages as limited by the cap on punitive damages under Title VII.[2]

## C. PLAINTIFF'S AWARD FOR DAMAGES MUST BE REDUCED BY HER PRIOR SETTLEMENTS WITH DGS AND RAYMOND ASBELL.

Prior to trial, Plaintiff settled with DGS for a payment of $250,000; Asbell paid Plaintiff $50,000. Because DGS, Plaintiff and Inter-Con were liable to Plaintiff based on the same claims and the same facts, the verdict must be reduced by $300,000. California Code of Civil Procedure section 877 states:

> [w]here a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before a verdict or judgment to one or more of a number or tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights . . . *it shall reduce the claims against the others* in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is greater. (emphasis added)

Because Plaintiff's claims and damage award are based in part on state law, the court should apply this rule and reduce Plaintiff's damages accordingly. *See Crowe v. Wiltel Communications Systems*, 103 F.3d 897, 899 (9th Cir. 1996) (applying state law to substantive issues when a federal court exercises supplement jurisdiction over related state claims); *See also Slaven v. BP America, Inc.*, 958 F.Supp. 1472, 1478 (C.D. Cal. 1997) ("[S]tate settlement provisions amount to substantive, rather than purely procedural, law" and will be applied when there is no conflicting federal rule.)

Courts applying federal common law have also reduced a plaintiff's damages when one of several defendants settled a claim prior to trial. *See Miller v. Apartments & Homes of New Jersey, Inc.*, (3rd Cir. 1981) 646 F2d 101, 110 (3d Cir. 1981) ("We therefore hold that in federal civil rights cases, where one or more defendants have settled with a plaintiff, the damages recoverable by that plaintiff shall be reduced by the amount of the settlement received."); *see also Corder v. Brown*,

[2] Plaintiff's damages award also must be reduced by the settlement payments made by DGS and Asbell, as described below.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 830 7200

25 F.3d 833, 840 (9th Cir. 1991) (allowing a reduction in attorneys fees based on the amount of a prior settlement in a cause of action under 42 U.S.C. § 1988.)

In *Valez v. Roche*, the court examined how this offset would apply in a cause of action under Title VII. 335 F.Supp.2d 1022, 1042 (N.D. Cal. 2004). A nonsettling defendant can claim an offset for prior settlements when 1) "the settlement and award (against which the offset is sought) were for the same injury" and 2) that injury is indivisible. *Id.*

Here, Plaintiff's settlements with DGS and Asbell were for the same injuries alleged at trial. In fact, all of Plaintiff's allegations in her Complaint were against Inter-Con, DGS and Raymond Asbell (collectively "the Defendants"). Plaintiff did not have separate and distinct claims against any of the Defendants. *See Good v. Macon County*, 730 F.Supp. 1425, 1427 (1989) (explaining that an offset on damages will not be allowed when "the claims against the settling defendants were separate and distinct claims from the trial defendants"); *see also Valez*, 335 F.Supp.2d at 1043 (defendant did not show it was entitled to an offset on damages when the settlement agreement with other defendant included separate claims based on different events). Here, all of Plaintiff's claims were alleged against all of the Defendants and the settlement agreements included all of the causes of action. Moreover, Plaintiff's theory in the case, adopted by the jury, was that Inter-Con was a joint employer with the other Defendants. Plaintiff cannot now claim that the case against Inter-Con was based on separate and distinct claims.

Plaintiff's injuries are also indivisible because they are all based on the same course of conduct. Plaintiff recovered damages based on sexual harassment under Title VII and the FEHA. Inter-Con was found liable for these actions because the jury found that they were joint employers with DGS, and that Asbell was her supervisor. Therefore, Inter-Con was strictly liable for the actions of Asbell. This liability is based on the same facts and her recovery is based on the same indivisible injuries.

## III.
## CONCLUSION

For all the foregoing reasons, Defendant Inter-Con Security Systems, Inc. requests that the Court issue an order: 1) striking and/or reducing the punitive damage award to a maximum

of $300,000; 2) allocating a substantial portion of the compensatory damages award to Plaintiff's Title VII claims; and 3) reducing the verdict by $300,000 based on the settlement payments received by Plaintiff from Defendants DGS and Raymond Asbell.

Dated: April 11, 2008

/s/ Matthew J. Ruggles
MATTHEW J. RUGGLES
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
INTER-CON SECURITY SYSTEMS, INC.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 830 7200

Firmwide:84872822.1 023767.1053 7 No. 2:05-cv-00827-MCE-JFM

DEFENDANT'S MOTION TO STRIKE/REDUCE AWARD OF DAMAGES TO PLAINTIFF