UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SHARON PATERSON,  No. 2:05-cv-00827-MCE-JFM

    Plaintiff,

  v.
<u>MEMORANDUM AND ORDER</u>

CALIFORNIA DEPARTMENT
OF GENERAL SERVICES,
RAY ASBELL and INTER-CON
SECURITY SYSTEMS, INC.,

    Defendants.

----oo0oo----

Defendant Inter-Con Security Systems, Inc. ("Inter-Con") moves for a new trial, pursuant to Federal Rule of Civil Procedure 59(a), following the jury's verdicts in favor of Plaintiff Sharon Paterson ("Plaintiff") on March 17, 2008 and April 10, 2008, respectively.

///
///
///
///

1

1   The Court entered an amended judgment on April 14, 2008.
2 That judgment reflected both the initial verdict, which found
3 Inter-Con liable and awarded compensatory damages to Plaintiff,
4 and the second verdict, which determined that additional punitive
5 damages against Inter-Con were proper.  As set forth below,
6 Inter-Con's Motion for New Trial will be denied.

**STANDARD**

Under Rule 59(a), the Court may grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the court, a miscarriage of justice." Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 818-819 (9th Cir. 2001) (citation omitted).

**ANALYSIS**

**A.  Retaliation in violation of California Labor Code § 1102.5.**

Inter-Con initially argues that the verdict against it for retaliation, in violation of California Labor Code § 1102.5, is against the clear weight of the evidence.  In assessing the merits of Inter-Con's contention in that regard, a stringent standard must be applied. Digidyne Corp. v. Data General Corp., 734 F.2d 1336, 1347 (9th Cir. 1984).  A motion for new trial may be granted on this ground only if the verdict is against the "great weight" of the evidence or if "it is quite clear that the jury has reached a seriously erroneous result."

2

1 Id., see also Venegas v. Wagner, 831 F.2d 1514, 1519 (9th Cir.
2 1987).  It would amount to an abuse of discretion on the part of
3 the Court to grant a new trial on any lesser showing, and the
4 Court cannot extend relief simply because it would have arrived
5 at a different verdict.  Silver Sage Partner, LTD v. City of
6 Desert Hot Springs, 251 F.3d 814, 818-19 (9th Cir. 2001).  Given
7 this rigorous standard, the Court cannot grant a new trial.
8      Despite Inter-Con's contention to the contrary, there was
9 sufficient evidence from which the jury could have reached its
10 decision finding Inter-Con in violation of Labor Code § 1102.5.
11 That statute provides in pertinent part as follows:

> "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

16      In order to establish a prima facie case of retaliation
17 under § 1102.5, Plaintiff had to show 1) that she engaged in
18 protected activity; 2) that she suffered an adverse employment
19 action; and 3) that a nexus existed between her exercise of the
20 protected activity and the adverse employment action to which she
21 was subjected.  Mokler v. County of Orange, 157 Cal. App. 4th
22 121, 138 (2007).  For purposes of § 1102.5, "[a]n employee
23 engages in protected activity when she discloses to a
24 governmental agency reasonably based suspicions of illegal
25 activity."  Id. at 137.
26 ///
27 ///
28 ///

Plaintiff asserted at trial that Inter-Con retaliated against her by terminating her in October of 2003 because of complaints in November of 2002 about sexual harassments she was subjected to by a state employee, Alvin Jones. In claiming that the verdict in Plaintiff's favor on her § 1102.5 claim was against the clear weight of the evidence, Inter-Con first claims that Plaintiff failed to even make a prima facie claim under § 1102.5 because no evidence was presented that she engaged in any protected activity as defined in the statute. That argument fails. Plaintiff testified that she did complain to Mr. Jones' supervisor, Gabriel Andrade, about Jones' conduct. Trial Transcript, 187:22-188:15.[1] Inter-Con's own personnel manager, Leslie Marcell, also confirmed this during her trial testimony. The fact that a complaint to the State was made is further underscored by the testimony of Anna Hernandez, a state employee responsible for investigating discrimination complaints, who testified that the matter was referred to her for investigation. As a result of Ms. Hernandez's investigation it was determined that Alvin Jones had committed sexual harassment.

In addition, although Inter-Con attempts to rely on <u>Patten v. Grant Union High School District</u>, 134 Cal. App. 4th 1378 (2005) for the proposition that Plaintiff's complaints about Mr. Jones did not constitute protected activity, the <u>Patten</u> case is distinguishable.

///

///

---

[1] All further page and line references in this Memorandum and Order are to the Trial Transcript, unless noted otherwise.

In <u>Patten</u>, the court found that certain disclosures about a teacher's alleged improprieties failed to rise to the level of "whistleblower" status for purposes of § 1102.5, because the allegations entailed only internal personnel issues as opposed to any violation of a state or federal statute as contemplated by § 1102.5.  Here, unlike <u>Patten</u>, Plaintiff made a written complaint of sexual harassment which clearly is prohibited by both state and federal law.  Moreover, as indicated above, that complaint resulted in an investigation which concluded that sexual harassment had indeed occurred.

Inter-Con also alleges that no nexus was established between Plaintiff's complaints concerning Alvin Jones and her ultimate termination by Inter-Con.  While Inter-Con claims that Ray Asbell testified he did not know about Plaintiff's prior complaint of sexual harassment until after he demanded that she be removed from the State Department of General Services ("DGS") contract, the fact remains that a memorandum written contemporaneously by Mr. Asbell suggests that the meeting with Inter-Con personnel (at which time the prior complaint was disclosed) occurred on October 7, 2003, the same day Asbell wrote a letter demanding her removal from the state security contract.  Although Asbell testified that the date was in error, the jury's finding of liability under § 1102.5 indicates that his claim in that regard was not afforded credence.  The Court will not question that credibility determination in the context of a motion for new trial.

///

///

///

5

Inter-Con also claims that, even if Plaintiff did establish the necessary prima facie showing for a retaliation claim under § 1102.5, it nonetheless established a legitimate, non discriminatory reason for Plaintiff's termination; namely, her inappropriate behavior to a state employee in a public garage. Inter-Con's characterization in that regard ignores the fact 1) that evidence was presented at trial that the incident in question was both relatively inconsequential and had been resolved in any event by the parties themselves (see 828:9-16; 833:13-19; 837:6-10; 839:23-840:6); and 2) that Plaintiff received no progressive discipline prior to being terminated, despite the fact that the stated grounds for her termination referenced an earlier incident for which she had never been reprimanded, and despite the fact that Inter-Con purportedly had a policy of progressive discipline.  712:2-6; 713:4; 733:11-14.

### B.  Joint Employer Liability

According to Inter-Con, the jury's determination that it and DGS were "joint employers" of Plaintiff was also contrary to the clear weight of the evidence, hence justifying a new trial.  That contention is no more persuasive than Inter-Con's first argument, discussed above, with respect to liability under § 1102.5.  A joint employment relationship can exist where two employers both have rights to exercise certain control over an employee. Mathieu v. Norrell Corp., 115 Cal. App. 4th 1174, 1184 (2004).
///
///

6

1  Such joint control creates a relationship consisting of two
2  employers – the original, or "general" employer, and a second,
3  "special" employer.  Id. at 1183.  The primary consideration in
4  determing whether a joint employment relationship exists is
5  whether the alleged special employer, here DGS, had the right to
6  direct Plaintiff's activities of the manner or method in which
7  her work was performed.  See Riley v. Southwest Marine, Inc.,
8  203 Cal. App. 3d 1242, 1250 (1998).

9      There was ample evidence before the jury from which it could
10 have reasonably concluded that a joint employer relationship was
11 present in this case.  As counsel for Plaintiff points out, the
12 jury heard testimony 1) that Plaintiff was told by Inter-Con that
13 she would be reporting to Asbell (205:12-16); 2) that Asbell was
14 her day to day supervisor and directed her activities (207:16-18;
15 208:5-9); 3) that Inter-Con personnel admitted at trial that
16 clients like DGS provided training to Inter-Con guards (702:20-
17 25); 4) that Asbell told Plaintiff he expected her to report to
18 him any problems she was having with other guards (606:11-17);
19 5) that Asbell had the power to change shifts and remove guards
20 (210:6-9; 606:18-607:17; 206:13-14; 612:21-613:12); 6) that the
21 Master Contract between the State and Inter-Con itself states
22 that DGS would be responsible for the general direction of the
23 security guards, including supervision by client agency personnel
24 (816:18-817:2); and 7) that Anna Hernandez, DGS EEO investigator,
25 herself concluded that Asbell supervised the security guards
26 pursuant to Asbell's own admission in that regard (92:4-14;
27 100:6-20).
28 ///

7

As the foregoing makes clear, any determination as to whether DGS and Inter-Con were joint employers was by nature fact-specific and required the weighing of numerous factors. The Court will not disturb the conclusion reached by the jury after it weighed the evidence in favor of, and against, any finding of a joint employer relationship in this case. Inter-Con's Motion for New Trial on that basis is accordingly also denied.

### C.  Other Arguments

In addition to the above arguments urging the Court to order a new trial on grounds that the jury's findings were against the clear weight of the evidence, Inter-Con makes several other evidentiary arguments also aimed at overturning the jury's verdict.  First, Inter-Con claims that Anna Hernandez, an EEO officer with the State who was involved in the investigations of Plaintiff's sexual harassment claims against both Alvin Jones and Ray Asbell, should not have been permitted to opine whether or not any harassment took place, or whether Asbell was involved in supervising Plaintiff.  Contrary to Inter-Con's suggestion, however, Ms. Hernandez was not offering an impermissible legal conclusion but rather was simply describing the results of her own investigation and the determinations she made in accordance with that investigation.  Her testimony in that regard was proper.

///
///
///

8

1        Secondly, Inter-Con claims that the punitive damages award
2   against it is unsound because Leslie Marcell, the individual
3   identified by the jury as the managing agent whose conduct
4   justified the imposition of punitive damages against the company,
5   in fact did not qualify as such an agent. As Inter-Con admits,
6   however, whether an employee is a managing agent of an employer
7   is a fact-intensive inquiry. Kolstad v. Am. Dental Ass'n,
8   27 U.S. 526, 543 (1999). "In making this determination, the
9   court should review the type of authority that the employer has
10  given to the employee, the amount of discretion that the employee
11  had in what is done and how it is accomplished." Id. (citations
12  omitted). While an employee need not be an officer or director
13  of the company to qualify as a managing agent, he or she does
14  need to be important in the organization. Id.
15       Inter-Con itself called Ms. Marcell, its Human Resources
16  Manager responsible for the DGS contract, as a witness to testify
17  concerning Inter-Con's sexual harassment and EEO policies.
18  698:8-701:16; 705:1-12; 707:6-19, 708:5-17. Ms. Marcell's
19  testimony establishes that at the time Plaintiff complained about
20  Alvin Jones' sexual harassment (as well as the subsequent
21  retaliation against Plaintiff by her then supervisor at Inter-
22  Con, John Cullifer), Ms. Marcell was the Inter-Con manager
23  responsible for interpreting and enforcing Inter-Con's sexual
24  harassment and retaliation policies with regard to the DGS
25  contract. See 701:11-16; 719:25-720:4. This evidence all
26  supports the jury's finding that Ms. Marcell was a managing
27  agent, as reflected in the jury's special verdict.
28  ///

1  That verdict expressly found that Inter-Con was liable for
2  Asbell's harassment "because the manner in which Inter-Con
3  responded" to the charges Plaintiff filed while Ms. Marcell was
4  responsible for EEO matters related to the DGS contract would
5  "discourage a reasonable woman from complaining to Inter-Con
6  about Raymond Asbell's conduct.  See Docket No. 155.
7      Substantively, Ms. Marcell admitted that at trial that
8  Inter-Con had no EEO procedures to guide an employee like
9  Plaintiff wishing to file a sexual harassment claim against a
10 customer, despite Inter-Con's regular practice of providing
11 contract employees to worksites like those of DGS herein.
12 Additionally, Ms. Marcell admitted at trial that it would be
13 retaliatory to remove someone from a full time position as a
14 result of a sexual harassment complaint and not give the employee
15 another full time position at another job.  724:7-16.  Here,
16 Plaintiff testified she was removed from her work assignment
17 after lodging her complaint against Alvin Jones, and subsequently
18 was offered only a part-time assignment.
19     Given the scope of Ms. Marcell's duties, as well as her
20 testimony concerning Inter-Con's response to Plaintiff's claims,
21 it was not improper for the jury to have found both that
22 Ms. Marcell was a managing agent for Inter-Con, and that the
23 company's conduct justified punitive damages.
24 ///
25 ///
26 ///
27 ///
28 ///

10

**CONCLUSION**

In sum, based on all the foregoing, Inter-Con's Motion for New Trial is DENIED.[2]

IT IS SO ORDERED.

Dated: October 27, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

11