1  LAWRENCE J. KING (CSB #120805)
   6 "C" STREET
2  PETALUMA, CA 94952
   PHONE: (707) 769-9791
3  FAX:     (707) 769-9253

4  VICTOR C. THUESEN, ESQ., #92467
   LAW OFFICES OF VICTOR C. THUESEN
5  11 WESTERN AVENUE
   PETALUMA, CALIFORNIA  94952
6  TELEPHONE:        (707) 763-5030
   FAX: (707) 763-1848
7  email: vthuesen@sbcglobal.net

8  Attorneys for Plaintiff,
   Sharon Paterson
9

10

11                    UNITED STATES DISTRICT COURT

12                   EASTERN DISTRICT OF CALIFORNIA

13

14
   SHARON PATERSON,                    )    NO.    2:05-cv-00827-MCE-JFM
15                                      )
                    Plaintiff,          )    MEMORANDUM OF POINTS AND
16                                      )    AUTHORITIES IN SUPPORT OF
          vs.                          )    MOTION FOR AWARD OF
17                                      )    REASONABLE ATTORNEY FEES AND
   CALIFORNIA DEPARTMENT OF            )    COSTS
18 GENERAL SERVICES,                   )
   RAY ASBELL, and INTER-CON          )    Date:   January 9, 2009
19 SECURITY SYSTEMS, INC.,            )    Time:  9:00 a.m.
                                       )    Ctrm:  7
20                  Defendants.         )
                                       )
21

22

23

24

25

26

27

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AWARD OF REASONABLE
ATTORNEY FEES AND COSTS                                                    1

## TABLE OF CONTENTS

I.      INTRODUCTION        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.     ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      PLAINTIFF WAS THE PREVAILING PARTY . . . . . . . . . . . . . . . . . . . . . . . 6

        B.      THE REQUESTED FEES ARE REASONABLE. . . . . . . . . . . . . . . . . . . . . . . . 7

                (i)     The Hourly Rate Requested Is Appropriate. . . . . . . . . . . . . . . . . . . . . . 9

                (ii)    The Number of Hours Expended Is Reasonable. . . . . . . . . . . . . . . . . 12

        C.      PLAINTIFF IS ENTITLED TO AN ENHANCEMENT TO THE LODESTAR
                BY A MULTIPLIER OF 2.0. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        D.      PLAINTIFF IS ENTITLED TO RECOVER THE REQUESTED COSTS. . . . . 16

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1

## TABLE OF AUTHORITIES

2

FEDERAL CASES:

3

*Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). . . . . . . . . . . . . . . . . . . 6

4

*Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1994), *cert. denied*, 502 U.S. 1005, 112 S.Ct. 640 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5

6

*Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

7

*Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . 6

8

*Clark v. City of Los Angeles*, 803 F.2d 987 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9

*Davis v. Mason County*, 927 F.2d 1473 (9th Cir. 1989), *cert denied*, 502 U.S. 899, 112 S.Ct. 275 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10

*Harris v. McCarthy*, 790 F.2d 753 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11

12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

13

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). . . . . . . . . . . . . . . . . 6

*Jordan v. Multnomah County*, 815 F.2d 1258 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

14

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425  U.S. 951 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15

16

*Marsh v. Digital Equipment Corp.*, 699 F.Supp. 1411 (D.Ariz. 1988). . . . . . . . . . . . . . . . . . . . 14

17

*Mathur v. Bd. of Trustees*, 317 F.3d 738 (7th Cir.2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18

*Suzuki v. Yuen*, 678 F.2d 761 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

19

*Toussaint v. McCarthy*, 826 F.2d 901 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

20

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21

*United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990). . . . . . . . . . . . . . . . 6

22

STATE CASES:

23

*Baggett v. Gates* (1982) 32 Cal.3d 128, 185 Cal.Rptr. 232. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

24

*Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1 Cal.Rptr.2d 459. . . . . . . . . . . . . 9

25

*City of Oakland v. Oakland Raiders* (1988) 203 Cal.App.3d 78, 249 Cal.Rptr. 606 . . . . . . . . . 13

26

*Cummings v. Benco Bldg. Servs.* (1992) 11 Cal.App.4th 1383. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

27

28

*Downey Cares v. Downey Community Development Com.* (1987) 196 Cal.App.3d 983, 242 Cal.Rptr. 272 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 71 Cal.Rptr.2d 632 . . . . . . . 9

*Flannery v. Prentice* (2001) 26 Cal.4th 572, 110 Cal.Rptr.2d 809. . . . . . . . . . . . . . . . . . . . . . . . 12

*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 33 Cal.Rptr.3d 644. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ketchum v. Moses* (2001) 24 Cal.4th 1122. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Margolin v. Regional Planning Com.* (1982) 134 Cal.App.3d 999, 185 Cal.Rptr. 145. . . . . . . . 8

*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 78 Cal.Rptr.2d 913 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rojo v. Kliger* (1990) 52 Cal.3d 65, 72-73, 276 Cal.Rptr. 130. . . . . . . . . . . . . . . . . . . . . . . . . 16

*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 957-958, 218 Cal.Rptr. 839. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Serrano v. Priest* (1977) 20 Cal.3d 25, 141 Cal.Rptr. 315. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Serrano v. Unruh* (1982) 32 Cal.3d 621, 186 Cal. Rptr. 754 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sternwest Corp. v. Ash* (1986) 183 Cal.App.3d 74, 227 Cal.Rptr. 804 . . . . . . . . . . . . . . . . . . . 8


FEDERAL STATUTES:

Title VII of the Civil Rights Act of 1964, 42 U.S.C.§2000e, et seq.. . . . . . . . . . . . . . . . . . . . . . 5, 6


STATE STATUTES:

Fair Employment and Housing Act, Gov't Code §12900, et seq. . . . . . . . . . . . . . . . . . . . . . 6, 7, 16

Information Practices Act, Civ. Code, §1798.48, subd. (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Political Reform Act of 1974, Gov't Code §81000 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14


TREATISES

Leubsdorf, *The Contingency Factor in Attorney Fee Awards* (1981) 90 Yale L.J. 473, 480. . . . . 12

1

I.      INTRODUCTION

2

Plaintiff, Sharon Patterson, files this memorandum in support of her motion for an award

3

of $1,432,046.10 for attorney fees and costs incurred in the litigation of this case against

4

defendant Inter-Con Security Systems ("Inter-Con"). Plaintiff seeks an award of $1,417,556.13

5

for services performed and costs incurred by Lawrence King and $14,490,00.00 for services

6

performed by Victor C. Thuesen in the preparation of the motion for fees and related papers.

7

The action was brought pursuant to Title VII of the Civil Rights Act of 1964, 42

8

U.S.C.§2000e, et seq., and the State of California's Fair Employment and Housing Act, Gov't

9

Code §12900, et seq. ("FEHA"). Plaintiff's motion seeks an award of fees under both statutes

10

and an enhancement, or upward adjustment, of the "lodestar" by a multiple of 2.0 under FEHA.

11

II.     ARGUMENT

12

A.      PLAINTIFF WAS THE PREVAILING PARTY

13

Under FEHA, the prevailing plaintiff should recover fees under Cal. Gov't Code

14

§12965(b) "unless special circumstances would render such an award unjust." *Cummings v.*

15

*Benco Bldg. Servs.* (1992) 11 Cal.App.4th 1383, 1387. In actions arising under Title VII of the

16

Civil Rights Act of 1964, 42 U.S.C. §2000e-5(k) provides that "the court, in its discretion, may

17

allow the prevailing party . . . a reasonable attorney's fee . . . ."  Absence special circumstances

18

not present here, a prevailing party should ordinarily recover attorney's fees. *Toussaint v.*

19

*McCarthy*, 826 F.2d 901 (9th Cir. 1987)

20

"The basic, underlying purpose of FEHA is to safeguard the right of Californians to seek,

21

obtain, and hold employment without experiencing discrimination" on account of, *inter alia*,

22

gender, race or color. *Flannery v. Prentice* (2001) 26 Cal.4th 572, 582-583, 110 Cal.Rptr.2d 809.

23

FEHA affords California employees broad protection against discrimination, harassment, and

24

retaliation on any of a wide range of impermissible bases. Cal. Gov't Code §§ 12920, 12921,

25

12940; *Rojo v. Kliger* (1990) 52 Cal.3d 65, 72-73, 276 Cal.Rptr. 130. "'Without some

26

mechanism authorizing the award of attorney fees, private actions to enforce such important

27

public policies will as a practical matter frequently be infeasible.'" *Flannery v. Prentice*, *supra*,

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AWARD OF REASONABLE
ATTORNEY FEES AND COSTS                                                                          5

at 583, quoting *Baggett v. Gates* (1982) 32 Cal.3d 128, 142, 185 Cal.Rptr. 232. An award of reasonable attorney fees to a prevailing plaintiff is said to accomplish "the Legislature's expressly stated purpose of FEHA 'to provide effective remedies that will eliminate these discriminatory practices.'[citation omitted]." *Flannery v. Prentice, supra,* at 583.

Plaintiff was clearly the prevailing party in this action inasmuch as the jury found in her favor and awarded $827,500.00 as compensatory damages for the harm she suffered, (Verdict, March 17, 2008), and $4,137,500.00 in exemplary damages. (Verdict, April 10, 2008) In a special verdict, the jury found, *inter alia*, that: (1) Inter-Con and the State of California's Department of General Services ("DGS") were "joint" or "dual" employers of plaintiff; (2) Ray Asbell, an employee of DGS, was plaintiff's supervisor; (3) Asbell subject plaintiff to unwanted harassing conduct; (4) Asbell's conduct was severe, widespread or persistent and created a hostile working environment for women in plaintiff's circumstances; (5) Inter-Con failed to provide a reasonable avenue for plaintiff to complain; (6) Inter-Con's response to plaintiff's previous complaint would discourage a reasonable woman from complaining about Asbell's conduct toward plaintiff; (7) plaintiff's previous complaint was a motivating factor for her termination, and; (8) Inter-Con did not establish that plaintiff was terminated for legitimate reasons. (Verdict Form, March 17, 2008)

B.   THE REQUESTED FEES ARE REASONABLE

The calculation of a "reasonable attorney's fee" under both FEHA and Title VII requires the fixing of a "lodestar" figure by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131-1132, 104 Cal.Rptr. 377*; see, also, Serrano v. Priest* (1977) 20 Cal.3d 25, 141 Cal.Rptr. 315 ("*Serrano III*"*); Blum v. Stenson*, 465 U.S. 886, 888; 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "[The] calculation of fees for prevailing civil rights plaintiffs is to be the same as in traditional fee arrangements and . . . all reasonable time spent is to be compensated." *Suzuki v. Yuen*, 678 F.2d 761, 764 (9th Cir. 1982).

The goal of an attorney fee award "is to fix a fee at the fair market value for the particular

1   action." *Ketchum v. Moses, supra,* 24 Cal.4th at 1132. "[F]ee awards should be fully

2   compensatory." *Id.*, at 1133. "[A]bsent circumstances rendering the award unjust, an attorney fee

3   award should ordinarily include compensation for *all* the hours *reasonably spent* " in litigating

4   the action to a successful conclusion. *Ibid.* (italics in original) "Reasonably spent" means that

5   time spent "in the form of inefficient or duplicative efforts is not subject to compensation." *Id.,* at

6   1132.

7       Reasonable hourly fees are to be calculated according to the prevailing market rates in the

8   relevant community with an eye to the fees charged by "lawyers of reasonably comparable skill,

9   experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11, citing

10  *Blum v. Stenson, supra,*  465 U.S. at 895, n.11; *see also; Jordan v. Multnomah County*, 815 F.2d

11  1258, 1262 (9th Cir. 1987) ["The prevailing market rate in the community is indicative of a

12  reasonable hourly rate."] In determining a reasonable fee award, the district court considers both

13  the "experience, skill and reputation of the attorney requesting fees," *Trevino v. Gates*, 99 F.3d

14  911, 924 (9th Cir. 1996), and "the prevailing market rates in the relevant community." *Blum v.*

15  *Stenson, supra*, 465 U.S. at 895.

16      Under California precedent, the lodestar is determined by reference to a variety of factors,

17  including the level of skill necessary to engage in the particular litigation, time limitations

18  imposed by the litigation, the amount obtained, the reputation of the attorney and the

19  undesirability of the case. *Margolin v. Regional Planning Com.* (1982) 134 Cal.App.3d 999,

20  1004, 185 Cal.Rptr. 145.

21      In determining an appropriate market rate under federal precedent, the district court may

22  refer to the factors developed by the Fifth Circuit Court of Appeals in *Johnson v. Georgia*

23  *Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and approved by the Ninth Circuit

24  Court of Appeals in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert.*

25  *denied*, 425  U.S. 951 (1976); *see also United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d

26  403, 406 (9th Cir. 1990)

27      Declarations of the "prevailing market rate in the relevant community . . . [are] sufficient

28

1   to establish the appropriate [billing] rate for lodestar purposes." *Bouman v. Block*, 940 F.2d 1211,

2   1235 (9th Cir. 1994), *cert. denied*, 502 U.S. 1005, 112 S.Ct. 640 (1991) Generally, it is "the rates

3   of attorneys practicing in the forum district" that are employed to establish the reasonable hourly

4   rate. *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1989), *cert denied*, 502 U.S. 899,

5   112 S.Ct. 275 (1991).

6   As described, *infra* at part C., the court may in its discretion increase the ultimate award

7   of fees to effect the purposes of FEHA. It must begin, however, by determining "all the hours

8   reasonably spent" and multiplying that total by "the hourly prevailing rate for private attorneys in

9   the community conducting *noncontingent* litigation of the same type." *Serrano v. Unruh* (1982)

10  32 Cal.3d 621, 625, 186 Cal.Rptr. 754 ("*Serrano IV*")( italics in original) The resulting sum is

11  the "lodestar." (Id.)

12  Plaintiff's counsel have submitted detailed declarations addressing those factors

13  that are relevant to a determination of an appropriate market rate. The novelty and difficulty of

14  the issues involved in the case, the skill required to litigate those issues, the preclusion of other

15  employment, the contingency nature of the fee, relevant time constraints, the amount at stake and

16  the results obtained, and the experience, reputation, and ability of the attorneys have all been

17  fully addressed in the declarations submitted by plaintiff's counsel.

18  (i)      The Hourly Rate Requested Is Appropriate

19  Plaintiff seeks an award of $450.00 per hour for work performed by Lawrence J. King on

20  the action and by Victor C. Thuesen for work performed in association with the motion for an

21  award of reasonable fees and costs. (*See, generally*, King and Thuesen declarations in support of

22  fee motion) King began working on the case on or about October 1, 2004 and the case was tried

23  to a jury in March, 2008, some three and one-half years later. (Ex. A, King Dec)

24  The fee applicant bears the burden of establishing that both the hourly rate and requested

25  number of hours are appropriate. *Horsford v. Board of Trustees of California State University*

26  (2005) 132 Cal.App.4th 359, 33 Cal.Rptr.3d 644*; Hensley v. Eckerhart*, 461 U.S. 424, 433-4,

27  437 (1983). Plaintiff has submitted ample evidence in the form of declarations by Sacramento

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AWARD OF REASONABLE
ATTORNEY FEES AND COSTS                                                                    8

1  area attorneys who specialize in the litigation of employment cases that an hourly rate of $450.00

2  is reasonable and appropriate for the work performed on the case.

3      Christopher Whelan, a Sacramento attorney who specializes in employment law, has

4  billed at the hourly rate of $500.00 since 2007. In 2004, Whelan was awarded an hourly rate of

5  $475.00 by the Yolo County Superior Court for work performed from 2001 through May, 2004,

6  in *Roby v. McKesson*, a mental disability discrimination case. At the beginning of 2003, Whelan

7  raised his billing rate to $500.00 per hour, which he states was within the normal range of

8  $450.00 to $500.00 per hour for employment law trial counsel in Central and Northern

9  California, including the Sacramento area, who were generally equivalent to Whelan in

10  experience.  (¶¶ 7-8, Whelan Dec)

11      Daniel P. Costa, a Sacramento attorney since 1983 who generally represents employers in

12  employment discrimination cases, states that hourly rates in the area "currently range from

13  $225.00 for a competent but relatively inexperience**d** employment attorneys to $500.00 for the

14  best and most experienced employment attorneys." (¶ 3, Costa Dec) Costa considers King as

15  among the best and most experienced. (Id., at ¶ 4)

16      M. Catherine Jones, a Nevada City based attorney who has specialized in employment

17  law for thew past 18 years, states in her declaration that her hourly rate of $350.00 "falls in the

18  low to mid-end of the normal range charged by attorneys of similar skills and experience in the

19  greater Sacramento area" and that the $450.00 hourly rate being sought by plaintiff's counsel

20  here is well within the range for attorneys of similar skills and experience this community. (¶

21  9, Jones Dec)

22      These declarations establish that an hourly rate of $450.00 is both reasonable and well

23  within the range charged by attorneys of similar skills and experience in the forum community.

24  Both King and Thuesen have historically performed substantial work in the forum community

25  and have represented a number of civil rights plaintiffs who live and work in the forum

26  community. Plaintiff suggests in this respect that, because of the volume of work performed in

27  the Eastern District, the rates charged by King and Thuesen should be taken into account when

28

1  determining the hourly rates of counsel of similar skills and experience in the forum community.

2       It need also be considered that plaintiff was unable secure the services of counsel in

3  Sacramento despite the fact that she was assisted by her sister, an attorney for the State of

4  California. (¶ 3, Patterson Dec) Where local counsel cannot be obtained, the court should

5  consider evidence of hourly rates outside the forum when fixing on the lodestar. The *Ketchum*

6  court noted that, although the California Supreme Court has used the formulation "basic fee for

7  comparable legal services in the community . . . it has never hinted that, in the unusual

8  circumstance that local counsel is unavailable, the trial court is limited to the use of local hourly

9  rates." *Ketchum v. Moses, supra,* 24 Cal.4th at 1132, 104 Cal.Rptr.2d 377. The court in *Horsford*

10  *v. Board of Trustees, supra,* considered the failure of the trial court to consider plaintiff's

11  counsel's "home" rate in the absence of "any realistic indication plaintiffs could have found local

12  counsel" to be an abuse of discretion, *Horsford v. Board of Trustees, supra*, 132 Cal.App. 4th at

13  399, and further noted that a showing of no more than "a good faith effort to find local counsel"

14  (citing *Mathur v. Bd. of Trustees*, 317 F.3d 738, 742 (7th Cir.2003)), was necessary to justify the

15  fees claimed by out-of-town counsel.

16       The method of achieving adequate compensation for out-of-town counsel, when

17       reasonably necessary, rests within the trial court's discretion. In any event, the

18       policies of the FEHA attorney fee provisions require that the court consider

19       awarding market value compensation for an attorney who is from a higher fee

20       market if the plaintiff demonstrates that hiring local counsel was impracticable.

21  *Horsford v. Board of Trustees, supra*, 132 Cal.App. 4th at 399.

22       The evidence submitted by plaintiff establishes that an hourly rate of $450.00 is

23  consistent with the hourly rates charged for non-contingent work by lawyers with similar skills

24  and experience in the forum community. The evidence also establishes that plaintiff made a good

25  faith but unsuccessful effort to find local counsel, thereby supporting an award of the hourly rates

26  charged by King and Thuesen.

27  ///

28

1    (ii)    The Number of Hours Expended Is Reasonable

2    Plaintiff also submits that the number of hours expended in furtherance of the case is

3    reasonable and appropriate in every respect. Exhibit A to the Declaration of Lawrence King

4    provides an itemized listing of each activity performed on the case, by date and amount of time

5    expended. Those entries should provide sufficient information to permit defendant's counsel to

6    independently verify that the activities were actually performed and the time claimed.

7    Plaintiff is also entitled to recover fees and costs associated with the preparation of this

8    motion for fees. *Serrano IV, supra, at* 639. Fee shifting statutes are premised on the notion that

9    capable attorneys will act to "vindicate important rights affecting the public interest." *Ketchum,*

10   *supra,* at 1132. *Serrano IV* noted that the desire to attract such attorneys "will often be frustrated,

11   sometimes nullified, if awards are diluted or dissipated by lengthy, uncompensated proceedings

12   to fix or defend a rightful fee claim." *Serrano IV, supra,* at 632; *see also*, *Clark v. City of Los*

13   *Angeles*, 803 F.2d 987, 992 (9th Cir. 1986); *Harris v. McCarthy*, 790 F.2d 753, 758-59 (9th Cir.

14   1986).

15   Paragraph 10 to the Declaration of Victor C. Thuesen sets forth the time spent in

16   connection with preparation of the fee motion. Plaintiff maintains that both the hourly rate and

17   the number of hours claimed are reasonable. Accordingly, fees in the amount of $14,490.00

18   should thus be awarded for counsel's activities in connection with the herein motion.

19   C.    PLAINTIFF IS ENTITLED TO AN ENHANCEMENT TO THE LODESTAR
         BY A MULTIPLIER OF 2.0
20
21   Plaintiff seeks an upward adjustment to the lodestar by a multiplier of 2.0. California

     courts urge the application of such an upward adjustment where certain conditions are present,
22
     notably including the contingency nature of the attorney's compensation and the delay in
23
     payment, if any. Under *Serrano III* and cases that follow, such upward adjustments, or
24
     multipliers, are to be applied based on the presence of such factors as: (1) the novelty or
25
     difficulty of the issues in the litigation; (2) the skill displayed by the moving party's counsel, and;
26
     (3) whether and to what extent other employment was precluded by the nature of the litigation.
27

28
_____

1  The court is to determine "whether the litigation involved a contingent risk or required

2  extraordinary legal skill justifying augmentation of the unadorned lodestar in order to

3  approximate the fair market rate for such services. *Serrano III, supra,* 20 Cal.3d at 49.

4  The *Ketchum* court described the principle underlying lodestar adjustments in the

5  following terms:

6  Under our precedents, the unadorned lodestar reflects the general hourly rate for a

7  *fee-bearing case*; it does *not* include any compensation for contingent risk,

8  extraordinary skill, or any other factors a trial court may consider under *Serrano*

9  *III*. The adjustment to the lodestar figure, e.g., to provide a fee enhancement

10  reflecting the risk that the attorney will not receive payment of the suit does not

11  succeed, constitutes earned compensation; unlike a windfall, it is neither

12  unexpected nor fortuitous. Rather, it is intended to approximate market-level

13  compensation for such services, which typically includes a premium for the risk of

14  non-payment or delay in payment of attorney fees.

15  *Ketchum v. Moses, supra,* at 1138-1139.[1]

16  The *Ketchum* court described the purpose of a fee enhancement for contingent risk as

17  bringing "the financial incentives for attorneys enforcing important constitutional rights . . . into

18  line with incentives they have to undertake claims for which they are paid on a fee-for-services

19  basis. *Ketchum v. Moses, supra*, at 1132.

20  Under California law, the contingent and deferred nature of the fee award in a

21  civil rights or other case with statutory attorney fees requires that the fee be

22  adjusted in some manner to reflect the fact that the fair market value of legal

23  services provided on that basis *is greater than* the equivalent noncontingent

24  hourly rate.

25

26  [1]  Although the U.S. Supreme Court has held in *City of Burlington v. Dague*, 505
    U.S. 557, 112 S.Ct. 2638 (1992) that the contingent nature of the fee alone will not support an

27  upward adjustment, California courts are generally to apply a multiplier to the "lodestar" where a
    contingency fee agreement governed the attorney-client relationship. *Ketchum,* at 1136-1137.

28

1   *Horsford v. Board of Trustees, supra,* at 394-5 (emphasis supplied), citing *Ketchum v.Moses,*

2   *supra,* 24 Cal.4th at 1132-1133.

3         A lawyer who both bears the risk of not being paid and provides legal services is

4         not receiving the fair market value of his work if he is paid only for the second of

5         these functions. If he is paid no more, competent counsel will be reluctant to

6         accept fee award cases.

7   *Ketchum v. Moses, supra,* at 1133, quoting with approval from Leubsdorf, *The Contingency*

8   *Factor in Attorney Fee Awards* (1981) 90 Yale L.J. 473, 480.

9         Such fee enhancements are intended to compensate for the risk of loss generally in

10   contingency cases as a class. *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1419, 1

11   Cal.Rptr.2d 459. "[M]ost lawyers of this quality do seem to consider the prospects of success and

12   the fee recoverable before adding to their crowded calendars a case in which payment is

13   contingent." Leubsdorf, *supra,* 90 Yale L.J., at 501.

14         The notion that fees should be adjusted upward in contingency cases is well established in

15   California law. The lodestar adjustment method described here has also been generally applied

16   by California's courts under a number of different fee shifting statutes. See, e.g., *Meister v.*

17   *Regents of University of California* (1998) 67 Cal.App.4th 437, 448-449, 78 Cal.Rptr.2d 913

18   [Information Practices Act, Civ. Code, §1798.48, subd. (b)]; *Flannery v. California Highway*

19   *Patrol* (1998) 61 Cal.App.4th 629, 646, 71 Cal.Rptr.2d 632 [Fair Employment and Housing Act,

20   Gov't Code, §12900 et seq.]; *Downey Cares v. Downey Community Development Com.* (1987)

21   196 Cal.App.3d 983, 995-996, 242 Cal.Rptr. 272 [Political Reform Act of 1974, Gov't Code

22   §81000 et seq.]; *Beasley v. Wells Fargo Bank*, *supra*, 235 Cal.App.3d 1407, 1412 [Code Civ.

23   Proc. §1021.5]; *City of Oakland v. Oakland Raiders* (1988) 203 Cal.App.3d 78, 83-84, 249

24   Cal.Rptr. 606 [eminent domain]; *Sternwest Corp. v. Ash* (1986) 183 Cal.App.3d 74, 75-76, 227

25   Cal.Rptr. 804 [Civ. Code §1717]; *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172

26   Cal.App.3d 914, 957-958, 218 Cal.Rptr. 839] [inverse condemnation].

27         The Court of Appeal in *Flannery v. California Highway Patrol, supra,* noted the broad

28

1   authority for lodestar enhancements in stating that "the Legislature appears to have endorsed the

2   [lodestar adjustment] method of calculating fees, except in certain limited situations." *Flannery*

3   *v. California Highway Patrol, supra,* 61 Cal.App.4th at 646. In *Meister v. Regents, supra,* 67

4   Cal.App.4th at 448-449, the Court set forth what appears to be the established view on the

5   matter, namely that the lodestar adjustment method applies to *all* statutory fee awards under

6   California law unless the statutory authorization for the award specifically provided for another

7   method of calculation.

8       Enhancement of the lodestar in by a factor of 2.0 is particularly appropriate in this case.

9   The case presents the scenario of a plaintiff utterly without financial resources who had been

10  raped and thereafter terminated from her employment. Even with the assistance of her sister, a

11  lawyer in Sacramento, she was unable to secure the services of capable counsel in Sacramento.

12  Plaintiff's declaration suggests a loss of confidence and a person with no idea of how her legal

13  rights had been violated or how to pursue her claims. Plaintiff's counsel Larry King, an attorney

14  with long and specific experience litigating civil rights cases, and one fully capable of securing

15  plaintiff's just rewards, would not have been able to take the case without an expectation that he

16  would receive an enhancement to the "lodestar" if he prevailed. (¶ 8, King Dec)

17      Although the contingency nature of the fee agreement between King and plaintiff is alone

18  enough to justify a significant fee multiplier, King's superior skills and the exceptional result

19  obtained should also weigh in favor of awarding a significant enhancement. That superior result

20  could not have been predicted. From the outset, the case raised significant issues that are not

21  present in the usual case. (¶ 11, King Dec; ¶ 8, Thuesen Dec) The matter was vigorously

22  contested by teams of attorneys and firms and, despite King's efforts, settlement appeared out of

23  the question at all times prior to trial. (¶¶ 9-10, King Dec) In order to prevail at trial, King was

24  required to establish that Inter-Con and Department General Services ("DGS") were "joint" or

25  "dual" employers to counter Inter-Con's claims that it could not be held liable because the

26  harasser, Asbell, was not one of its employees. Accordingly, it was necessary to establish as a

27  factual matter that Inter-Con had relinquished to the DGS such control over plaintiff that both

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AWARD OF REASONABLE
ATTORNEY FEES AND COSTS                                                          14

1    DGS and Inter-Con could be considered plaintiff's employers.

2           King was also obliged to establish that Asbell acted as plaintiff's supervisor in order to

3    hold Inter-Con strictly liable for Asbell's conduct, whether or not Inter-Con knew of his conduct.

4    Under recent amendments to FEHA, Inter-Con could also be held liable for Asbell's conduct,

5    even if he were considered a "third party" over whom Inter-Con had no control, if Inter-Con

6    "knew or should have known" about his conduct. King managed to overcome difficulties

7    presented by the fact that plaintiff did not report Asbell's conduct to Inter-Con before she was

8    fired. To counter Inter-Con's claim that it had no way of knowing of Asbell's conduct, King was

9    able to meet the legal standard for liability by demonstrating that Inter-Con failed to provide its

10   employees with a meaningful mechanism to complain and that a reasonable woman would likely

11   be persuaded that the bringing of such a complaint would be futile. (Id., ¶ 11)

12          In this very difficult case in which plaintiff's counsel undertook the risk of never

13   receiving compensation a multiplier of 2.0 is warranted.

14                 D.   <u>PLAINTIFF IS ENTITLED TO RECOVER THE REQUESTED COSTS</u>

15          Plaintiff, as the prevailing party, is also entitled to recover her costs under both Cal. Gov't

16   Code §12965(b) and 42 U.S.C. §2000e-5(k). "The statutory authority to award a reasonable

17   attorney's fee includes the authority to award reasonable out of pocket expenses incurred by the

18   attorney that are normally charged to the client in the course of providing legal services." *Marsh*

19   *v. Digital Equipment Corp.*, 699 F.Supp. 1411, 1416 (D.Ariz. 1988).

20          Here, plaintiff's counsel has documented costs incurred that were reasonably necessary to

21   the conduct of the litigation and is entitled to recover those costs as well. (Ex. B, King Dec)

22   III.   <u>CONCLUSION</u>

23          On the basis of all the foregoing, plaintiff respectfully requests an award of attorney's fees

24   ///

25   ///

26   ///

27   ///

28

1   and costs in the amount of $1,432,046.10.

2   Dated: December 15, 2008

3                                           Respectfully submitted,

4

5

6                                     By:   /S/ Victor C. Thuesen
                                            VICTOR C. THUESEN
7                                           Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AWARD OF REASONABLE
ATTORNEY FEES AND COSTS